**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**STEPHANIE WOOLDRIDGE,**

     **Plaintiff,**

                                **Civil Action 2:14-cv-1139**
    **v.**                              **Judge Algenon L. Marbley**
                                  **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff, Stephanie Wooldridge, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed her applications for benefits on January 8, 2011, alleging that she has been disabled since January 8, 2011 as a result of Multiple Sclerosis ("MS") and related conditions.[1] Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff alleged that she suffers from MS, depression, poor left eye vision with optic

Administrative Law Judge Christopher B. McNeil (the "ALJ") held a hearing on August 27, 2012, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 28-56.)  Vocational Expert Jerry A. Olsheski, Ph.D. (the "VE") also appeared and testified.  *Id.*  On the date of the hearing, Plaintiff amended her alleged onset date of disability to January 17, 2012.  On November 27, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 88-97.)  On June 20, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-3.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified that she earned an associate's degree in dental hygiene in 2003 and was last employed as a dental hygienist in September 2009.  (R. at 34.)  She testified that she stopped working in 2009 after she was "laid off, or fired" due to her hand tremor, which interfered with her ability to maintain a steady hand while cleaning patients' teeth.  (R. at 36.)  Since 2009, she has worked as a substitute dental hygienist on occasion.  Prior to becoming a dental hygienist in 2003, Plaintiff worked part-time at Wal-Mart.  (R. at 35.)

Plaintiff testified that she was diagnosed with MS in 2006.  Regarding treatment of her MS, Plaintiff testified that she took Avonex and is currently participating in a two-year study, which requires her to get injections three times each week.  Her husband injects the medication for her.  (R. at 37-38.)  Plaintiff testified that she also sees an optometrist for her vision; urogynecologist for her overactive bladder; and a neurologist for her MS and related issues.  (R.

neuritis, loss of cognitive function, failure to control vehicle, dizziness, lack of balance, left side limp, tremor and spasticity, slower thinking and moving, and loss of muscular strength.

2

at 38-39.)  Plaintiff testified that she stopped driving in January 2012 after she had two car accidents.  She stated that she felt uncomfortable driving due to her dizziness, anxiety, and fatigue/tiredness.  (R. at 39.)  She further testified that she was prescribed a "Rollator walker" to help her to maintain balance, but had not yet received it.  (R. at 40.)

Regarding her psychological treatment, Plaintiff testified that she began seeing David Miller Ph.D. in early 2010.  *Id.*  She explained that she began seeing Dr. Miller because she was depressed, irate, and mad at her life because of her MS diagnosis.  Plaintiff further explained that she wrote a suicide note and tried to put a gun to her head, but her husband stopped her.  (R. at 40-41.)  She stated that Dr. Miller helped her with her depression and anxiety, but because he is a psychologist, he could not write her prescriptions.  Plaintiff testified that primary-care physicians, Drs. Jessica Cullivan and Megan Miller, prescribed her anti-depressants.  (R. at 41.)

When asked what kinds of things or situations cause her stress, Plaintiff testified that she stresses about everything, including her son starting preschool, doing laundry, maintaining balance, and making sure that she is healthy enough to take care of her son.  *Id.*  Plaintiff explained that she gets hyper and emotional when she is in a stressful situation.  (R. at 42.)  She also testified that she thought her depression was improving and wanted to get off of anti-depressant medication, but her doctor told her not to do so.  (R. at 44.)  She explained that recently she has been sad again and that her depression comes and goes.  Plaintiff explained that when she gets sad, she cries, has bad thoughts, and feels worthless.  *Id.*  She testified that she does not think she would be able to work when she feels that way because she is slow, tired, and her MS causes vertigo and dizziness.  (R. at 44-45.)

Plaintiff testified that she has a four year old son who she takes care of during the day. (R. at 45.)  She also testified that she has been applying for unemployment benefits and representing that she is able to work in order to receive those benefits.  *Id.*  Plaintiff explained that she applies for two dental hygienist jobs each week in order to be compliant with the unemployment benefits application.  She testified that she does not feel that she could perform a job as a dental hygienist on a full-time basis, however.  (R. at 46.)

**B.    Vocational Expert Testimony**

The VE testified that Plaintiff's past relevant employment includes a dental hygienist at the skilled, light exertional level.  (R. at 49.)  He testified that Plaintiff's other past employment as a short order/ grill cook, cashier, and store clerk was likely not substantial gainful activity.  (R. at 49-50.)

The ALJ proposed a hypothetical regarding an individual with Plaintiff's age, education, and relevant work experience and the following capabilities and limitations: able to occasionally lift and carry twenty pounds; able to frequently lift and carry ten pounds; able to push or pull to the same extent, using hand or foot controls; able to stand or walk about six hours in an eight-hour work day; able to sit about six hours in an eight-hour workday; cannot climb ladders, ropes, or scaffold; can occasionally climb ramps and stairs; can occasionally crouch and balance; can frequently stoop, kneel, and crawl; able to engage in bilateral fingering frequently; must avoid concentrated exposure to extreme heat; must avoid all exposure to unprotected heights, commercial driving, and hazardous machinery; and due to mental impairments, the individual can understand and remember simple and some complex instructions in a work setting where production quotas are not critical and the work setting is static.  (R. at 50-51.)

4

Based on the above hypothetical, the VE testified that the hypothetical individual could not perform any of Plaintiff's past work.  (R. at 51.)  The VE testified, however, that jobs exist in the local and national economy that the hypothetical individual would be able to perform.  He explained that examples include a hand packer, at the light exertional, unskilled level (2,000 jobs locally and 275,000 jobs nationally); production inspector at the light exertional, unskilled level (2,000 jobs locally and 250,000 jobs nationally); and mail clerk at the light exertional, unskilled level (1,400 jobs locally and 126,000 jobs nationally).   (R. at 52-53.)

### III.    MEDICAL RECORDS[2]

**A.    Capital Neurology Services, Kenneth A. Mankowski, D.O.**

On January 31, 2011, Kenneth A. Mankowski, D.O., noted that Plaintiff reported mild to moderate cognition dysfunction and mild to moderate fatigue.  (R. at 267.)  He further noted that her driving is safe and unrestricted and that she is independent in her activities of daily living. *Id.*  Dr. Mankowski also noted that Plaintiff denied anxiety, depression, change in behavior, and disorientation.  (R. at 268.)

On March 14, 2011, Plaintiff again visited Dr. Mankowski.  Regarding her mental capabilities, Dr. Mankowski noted that she reported mild to moderate cognitive dysfunction and mild to moderate fatigue, with the fatigue interfering with her planned activities 0-30% of the time.  (R. at 314.)  He noted that she can drive and was independent in her activities of daily living.  *Id.*  He also noted that she had good insight and follows commands.  (R. at 316.)

---

[2]Because Plaintiff's contentions of error only relate to her mental residual functional capacity, this Report and Recommendation only addresses the evidence in the record related to her mental capabilities and limitations.

On April 27, 2011, Dr. Mankowski noted that Plaintiff denied signs of depression, anxiety, disorientation, or changes in behavior.  (R. at 319.)

On January 17, 2012 and February 7, 2012, Plaintiff reported that she was stressed over her MS.  (R. at 337.)  She reported difficulty working due to cognitive dysfunction.  (R. at 337, 342.)  Dr. Mankowski again noted that Plaintiff denied anxiety, depression, changes in behavior, and disorientation. (R. at 339, 344.)  Dr. Mankowski commented that he was concerned that poor nutrition and depression may be the cause of increased MS symptoms, but noted again that Plaintiff denied depression.  (R. at 345.)  On January 17, 2012, he discussed a need for more intense observation of her for depression.  *Id.*  Finally, Dr. Mankowski noted that "[g]iven her request for [his] opinion regarding her ability to work [he] need[ed] to collect further data."  *Id.*

**B.     Tri-County Family Physicians Inc., Jessica Cullivan, M.D.**

Primary care physician, Jessica Cullivan, M.D., treated Plaintiff regarding possible depression.  On January 16, 2012, Dr. Cullivan noted that Plaintiff's "mood is much better, no libido. Feels like herself again, does get nervous at times but definitely not as depressed."  (R. at 354.)  On March 15, 2012, Dr. Cullivan noted that Plaintiff's mood was "better, still not great but better."  She further noted that Plaintiff has no suicide or homicide ideation.  (R. at 352.)  Dr. Cullivan also increased her dose of Prozac to 40mg.  (R. at 353.)

**C.     David E. Miller, PH.D.**

Plaintiff began seeing a psychologist, Dr. David Miller, in February 2010.  On March 15, 2011, Dr. David Miller completed a report regarding Plaintiff's mental capabilities and limitations.  (R. at 311-12.)  In the report, he noted that Plaintiff was oriented in all spheres, exhibits good judgment, has no problem with cognitive functioning, and that she struggles with

depression, anxiety, and apprehension due to her MS.  (R. at 311.)  He further noted that she can concentrate on most days, but has problems with sustained concentration.  Dr. Miller explained that Plaintiff experiences stress, frustration, and feelings of inadequacy due to her inability to work as a dental hygienist because of her hand tremor.  *Id.*  He noted that Plaintiff's depression and anxiety increase when her MS symptoms increase.  He stated that "on-going psychotherapy sessions have been extremely supportive and pt. responds well to support; currently pt. able to manage [without] anti-depressant meds. . . ." (R. at 312.)  He diagnosed Plaintiff with severe major depressive disorder, without psychotic features.  *Id.*  On August 11, 2011, Dr. Miller completed another report, which is substantially the same as the March 15, 2011 report.  (*See* 333-34.)

On May 1, 2012, Dr. David Miller conducted a psychological consultation of Plaintiff. (R. at 359.)  Dr. David Miller noted that Plaintiff has struggled with depression, anxiety, apprehension, and low self-esteem secondary to her MS diagnosis.  He noted that "[a]t times, her depressive features have resulted in some thoughts of self-harm, although she has never refined a plan nor taken any steps toward suicide attempts."  *Id.*  Dr. Miller indicated that he has treated Plaintiff regularly since February 2010 and that she has attended 39 sessions with him.  He stated that initially, she was seen every week to every other week, but is now seen on a monthly basis. (R. at 360.)  He noted that Plaintiff "feels her psychotherapy sessions have been helpful in learning coping skills to better manage her symptoms and resolving frustration or conflicts that lead to stress which exacerbates the physiological/neurological symptoms of MS." *Id.*

On mental status examination, Dr. Miller found that Plaintiff had an easy rapport and was cooperative, attentive, and tense.  (R. at 359.)  He further found that her facial expressions were

tense, worried, sullen, sad, and tearful; her affect was dysphoric; her mood was despairing, depressed, empty, friendly, angry, and anxious; her motor activity was decreased with tremors; her speech was normal and spontaneous; her behavior was normal; and her cognition was normal. *Id.*

Dr. Miller again noted that Plaintiff feels inadequate due to being unable to work as a dental hygienist, but stated that she has learned that she can still function well as a mother and wife. *Id.* He explained that she has "gained ground in self-esteem and reducing the pain associated with feeling inadequate." *Id.* Regarding compliance with treatment, Dr. Miller noted that "[Plaintiff] is very faithful to sessions, cooperative, and motivated as a patient; she seems anxious to learn more about her disease and coping skills that will help her function despite the limitations that MS pose on her." *Id.*

Dr. Miller also completed a Mental Residual Functional Capacity Assessment on May 1, 2012. Dr. Miller opined that Plaintiff is not limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He opined that Plaintiff is slightly limited in her ability to understand, remember and carry out short and simple instructions and in her ability to interact appropriately with the general public. (R. at 364.) He opined that Plaintiff is moderately limited in the following areas: in the ability to sustain an ordinary routine without special supervision; in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in the ability to accept instructions and respond appropriately to criticism from supervisors. He opined that Plaintiff is

markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to tolerate the ordinary stress and pressure associated with day to day work activity.  *Id.*  Dr. Miller concluded that Plaintiff's conditions would deteriorate if she is placed under the stress of employment.  Finally, Dr. Miller opined that Plaintiff would not be capable of engaging in substantial gainful competitive employment because of her stress levels and MS symptoms.  (R. at 365.)

**D.    The Ohio State University Medical Center, Neurology Gahanna Carepoint**

On February 24, 2012, Plaintiff was treated at the Ohio State University Medical Center Multiple Sclerosis clinic by David Pitt, M.D.  (R. at 378.)  Plaintiff reported difficulties with memory, word finding, attention span, and thought processing.  She also reported fatigue and some irritability and depression.  *Id.*  On examination, Dr. Pitt noted that Plaintiff's mentation, memory, and affect appeared unremarkable.  (R. at 379.)  He also noted that her speech and comprehension were normal.  *Id.*  Dr. Pitt further noted that Plaintiff "has relapsing-remitting MS and has significant neurological impairment, namely cognitive as well as balance problems." (R. at 380.)

On March 23, 2012, Plaintiff was seen by Dr. Oas.  On examination, Dr. Oas noted that Plaintiff was alert and oriented to person, place, and time; able to comprehend spoken English without difficulty; her speech was fluent, with normal content and articulation; her attention memory and fund of knowledge were normal in conversation; and mood, affect and behavior were normal and appropriate.  (R. at 393.)

**E.  Megan Miller, D.O.**

On May 22, 2012, Plaintiff was seen by Dr. Miller.  Dr. Miller noted that Plaintiff's stress level was "medium."  (R. at 440.)  Plaintiff requested that her medication be changed from Prozac to Zoloft because Zoloft worked better for her.  Dr. Miller noted, however, that Plaintiff denied depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, and paranoia.  (R. at 441.)  On mental status examination, Dr. Miller noted that Plaintiff's judgment and insight was intact; that she was oriented to time, place, and person; that her memory was intact for recent and remote events; and that she had no depression, anxiety, or agitation.  *Id.*  Dr. Miller prescribed Plaintiff 50 milligrams of Zoloft for depression.  *Id.*

**F.  State-Agency Psychologists**

On April 4, 2011, state-agency psychologist, Bruce Goldsmith, Ph.D., opined that Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.  (R. at 60-61.)  Dr. Goldsmith also completed a Mental Residual Functional Capacity Assessment.  He opined that Plaintiff does not have understanding and memory limitations, but does have sustained concentration and persistence limitations.  (R. at 64.)  He found that she is not significantly limited in her ability to carry out very short and simple instructions; to carry out detailed instructions; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; or to make simple work-related decisions.  He concluded that she is moderately limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within

10

customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Goldsmith concluded that Plaintiff is limited to simple to moderately complex tasks without strict time or production demands.  He opined that she has no social interaction limitations or adaptation limitations.  (R. at 64-65.)

On August 15, 2011, Karla Voyten, Ph.D., assessed Plaintiff's mental residual functional capacity.  Dr. Voyten affirmed Dr. Goldsmith's opinions, and agreed that Plaintiff is limited to simple to moderately complex tasks without strict time or production demands.  (R. at 79-80.) Dr. Voyten concluded that Plaintiff "does have some increased anxiety and depression with dx. However, she has good compliance with psychotherapy, and she is able to carry out her daily routines with support of therapy and family." (R. at 80.)

## IV.    THE ADMINISTRATIVE DECISION

On November 27, 2012, the ALJ issued his decision.  (R. at 88-97.)  The ALJ found that Plaintiff met the insured status requirements through December 31, 2014.  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially

---

[3]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

11

gainful activity since January 8, 2011, the alleged onset date.  (R. at 90.)  At step two, the ALJ

found that Plaintiff had the severe impairments of MS, major depressive disorder, and anxiety

disorder.  (*Id.*)  The ALJ also found that Plaintiff has a non-severe impairment of optic atrophy

with neuritis.  (*Id.*)  At step three, he found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  At step four of the sequential

process, the ALJ assessed Plaintiff's residual functional capacity ("RFC").  The ALJ explained

as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and push or pull to the same extent using hand or foot controls.  The [Plaintiff] can stand or walk about 6 hours and sit about 6 hours in an 8 hour work day.  She cannot climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, can occasionally crouch and balance, and can frequently stoop, kneel, and crawl.  Her bilateral fingering is limited to frequent. She must avoid concentrated exposure to extreme heat, and must avoid all exposure to unprotected heights, commercial driving, and hazardous machinery. Due to her mental impairments, the [Plaintiff] can understand and remember simple and some complex instructions, where production quotas are not critical, in a static work setting.

(R. at 91.)  In reaching this determination, the ALJ assigned "great weight" to the opinions of the

Bureau of Disability Determination's medical experts ("state-agency psychologists").  He

explained that their opinions are based on the objective medical evidence of the record,

consistent with the credible portion of activities of daily living evidence, and have been provided

---

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

by sources shown to be familiar with Social Security Administration standards.  The ALJ also considered Plaintiff's treating psychologist's, Dr. Miller's, opinion, but ultimately found that it was not entitled to any significant weight and rejected it.  Finally, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are only credible to the extent that they are consistent with the assessed RFC.

At step four, relying on the VE's testimony, the ALJ determined that Plaintiff is not capable of performing past relevant work.  The ALJ concluded, however, that other jobs exist in significant numbers in the state and national economy that Plaintiff can perform based on the VE's testimony.  (R. at 96-97.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 97.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.  2007)).

## VI.    LEGAL ANALYSIS

Plaintiff raises two contentions in her Statement of Specific Errors.  First, Plaintiff contends that the ALJ did not properly weigh the medical opinions in the record.  Second, Plaintiff contends that the ALJ's credibility assessment is not supported by substantial evidence.

### A.    Weighing Opinion Evidence

Within her first contention of error, Plaintiff contends that the ALJ improperly failed to give controlling weight to Dr. Miller's opinion and failed to explain the weight he ultimately assigned to it.  She also alleges that the ALJ improperly considered a "non-existent" consultative

report in determining Plaintiff's RFC and improperly assessed great weight to the opinions of the state-agency psychologists' opinions.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. Apr. 28, 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

### 1.  Plaintiff's Treating Psychologist, David Miller, Ph.D.

Here, the ALJ acknowledged that Dr. David Miller, Plaintiff's psychologist, is a treating

source.  The ALJ found that Dr. Miller's opinion was not entitled to controlling weight and

ultimately rejected it, explaining as follows:

> Dr. Miller appears to be a treating source within the meaning of 20 CFR
> §416.927. . . . Dr. Miller's assessment is not entitled to that degree of probative
> consideration [controlling weight] for multiple reasons.  First, the doctor does not
> provide sufficient clinical and laboratory data to support his conclusion.  No
> treatment notes from Dr. Miller have been submitted in evidence.  Dr. Miller
> indicated that the claimant was physically disabled, although he has no medical
> training and has no basis other than the claimant's subjective claims for making
> such a statement.  Last, his conclusion of disability addresses an area that is
> specifically reserved to the Commissioner under Social Security Ruling 96-5p.
> This report is not entitled to any significant weight and is therefore rejected.
>
> The possibility always exists that a doctor may express an opinion in an effort to
> assist a patient with whom he or she sympathizes for one reason or another.
> Another reality which should be mentioned is that patients can be quite insistent
> and demanding in seeking supportive notes or reports from their physicians, who
> might provide such a note in order to satisfy patient's requests and avoid
> unnecessary doctor/patient tension.  While it is difficult to confirm the presence of
> such motives, they are more likely in situations where the opinion in question
> departs substantially from the rest of the evidence of the record, as in the current
> case.  The totality of the medical evidence clearly supports that the claimant is not
> as severely limited as assessed by Dr. Miller.

(R. at 93.)

The Undersigned finds that the ALJ provided legally sufficient reasons for rejecting Dr.

Miller's opinion as controlling.  Specifically, the ALJ found that Dr. Miller's opinions are not

supported by sufficient clinical and laboratory data.  Additionally, the ALJ concluded that Dr.

Miller, a psychologist with no medical training, had no basis to support his opinion that Plaintiff

is physically disabled.  The ALJ also pointed out that Dr. Miller's opinion is inconsistent with

the totality of the medical evidence in the record.  Finally, the ALJ rejected Dr. Miller's

conclusion that Plaintiff is disabled because such determinations are specifically reserved to the Commissioner.  These are rational reasons to discount a treating source's opinion.  *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (concluding that the ALJ met the "good reasons" requirement for a variety of reasons, including by noting that the treating physician's findings were "unsupported by objective medical findings and inconsistent with the record as a whole"); *see also* 20 C.F.R. § 404.1527(d)(3) (identifying "supportability" as a relevant consideration is determining the weight to assign to a medical opinion); *see also* 20 C.F.R. § 404.1527(c)(4) (identifying consistency with the record as a whole as a relevant consideration in deciding the weight to give a medical opinion); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner).

The Undersigned further finds that substantial evidence supports the ALJ's stated reasons.  As a preliminary matter, the Undersigned notes that Plaintiff does not challenge the ALJ's rejection of Dr. Miller's opinion that Plaintiff is "permanently and totally disabled." Plaintiff also does not challenge the ALJ's finding that Dr. Miller is not qualified to draw conclusions related to Plaintiff's physical conditions because Dr. Miller is a psychologist.  (*See* Pl.'s St. of Errors 9-10, ECF No. 12.)  Plaintiff contends, however, that the ALJ's remaining stated reasons do not serve as sufficient bases for rejecting Dr. Miller's opinions regarding Plaintiff's specific mental functional limitations.  The Undersigned disagrees.

First, substantial evidence supports the ALJ's finding that Dr. Miller's opinions are not supported by sufficient clinical and laboratory data.  As the ALJ notes, Plaintiff did not submit any treatment notes from her thirty-nine (39) visits with Dr. Miller.  The Undersigned notes that

the lack of treatment notes alone is not dispositive, as Dr. Miller did submit reports containing information regarding signs and symptoms he observed while treating Plaintiff.  Nevertheless, the supporting information included in the reports did not contain clinical or laboratory data that could support his extreme opinion that Plaintiff is disabled.

Dr. Miller's opinions are not supported by the objective evidence in the record, including his own reports.  First, a review of the medical records demonstrates that Plaintiff repeatedly denied depression, anxiety, change in behavior, and disorientation.  (R. at 268, 319, 339, 344, 345, 441.)  Additionally, Dr. Cullivan noted that Plaintiff's mood was better, that she was feeling like herself again, and was not as depressed.  (R. at 354, 352.)  On March 23, 2012, Dr. Oas noted that Plaintiff was alert and oriented to person, place, and time; able to comprehend without difficulties; that her memory and attention was normal; and that her mood, affect and behavior were normal.  (R. at 393.)  Dr. Pitt did note, however, that Plaintiff has cognitive impairment due to her MS.  (R. at 380.)  This objective evidence does not support Dr. Miller's opinions.

Further, Dr. Miller's own reports indicate that Plaintiff has good judgment, no problems with cognitive functioning, is able to concentrate on most days, responds well to treatment, and can manage well without anti-depressants.  (R. at 311-12, 333-34.)  He also indicated that Plaintiff initially had counseling sessions weekly or bi-weekly, but now only sees Dr. Miller monthly.  Further, Plaintiff testified that she told her doctor she wanted to cease taking anti-depressants.  (R. at 44.)  This evidence indicates that Plaintiff's mental conditions are not as severe as Dr. Miller concluded.  (R. at 360.)

Finally, Dr. Miller's statements are unsupported by and inconsistent with Plaintiff's own testimony.  For example, Plaintiff alleges that she began treatment with Dr. Miller because she

19

put a gun to her head to attempt suicide.  Dr. Miller, however, reported that Plaintiff had never "refined a plan nor taken any steps towards suicide attempts."  (R. at 40-41, 359.)  Additionally, Plaintiff reported that she has cognitive difficulties.  But, Dr. Miller reported that she has no cognitive difficulties.  (R. at 311, 333, 337, 342.)  These inconsistencies further support the ALJ's finding that Dr. Miller's opinions are not supported by the totality of the evidence in the record.

Plaintiff also contends that, after the ALJ declined to give controlling weight to Dr. Miller's opinion, he failed to determine what weight to attach to the opinion using the factors set forth in 20 C.F.R. § 404.1527(c).  This contention is unavailing.  There is no requirement that the ALJ "expressly" consider each of the *Wilson* factors within the written decision when determining the weight of a medical opinion.  *See Tilley,* No. 09-6081, 2010 WL 3521928, at *6 (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).  The ALJ properly considered factors including supportability, consistency, specialization, and the nature of the treating relationship in weighing Dr. Miller's opinion.  Thus, the Undersigned concludes that the ALJ properly considered Dr. Miller's opinion, declined to afford it controlling weight, and provided legally sufficient reasons for ultimately rejecting it.  Moreover, substantial evidence supports the ALJ's stated reasons for rejecting Dr. Miller's opinions.  It is therefore **RECOMMENDED** that Plaintiff's contention of error related to Dr. Miller be **OVERRULED**.

### 2.  Psychological Consultative Evaluator

The Undersigned acknowledges that the ALJ cites to and assigns "great weight" to a psychological consultative report that does not exist in the record.  While the ALJ erred in citing to a non-existent opinion, the error is harmless because the ALJ's assessed RFC is consistent with, and more restrictive than, the state-agency psychologists' opinions, which the ALJ also assigned "great weight."  (*See* R. at 60-61, 64-65, 91.)   As explained below, these state-agency psychologists' opinions are consistent with the totality of the evidence in the record. Accordingly, any error in referencing the non-existent consultative report was harmless.

### 3.  State-Agency Psychologists

The ALJ properly assigned the state-agency psychologists' opinions "great weight."  The Sixth Circuit has explained that

> opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

> Here, the ALJ weighed the state agency opinions and explained his findings as follows:

> Great weight is given to the residual functional capacity opinions and case analyses of the Bureau of Disability Determination (BDD) medical experts set forth in Exhibits 1A and 3A.  Although neither examining nor treating mental health providers, these experts are licensed psychologists with knowledge of the Social Security Administration's program and requirements.  Their opinions are based on the objective medical evidence of the record, and consistent with the medical evidence of record overall, including treatment records at. . . .  They are consistent with the credible portion of activities of daily living evidence, and have been provided by sources shown to be familiar with SSA and occupational standards.

21

(R. at 95.)  Thus, the ALJ properly followed SSA regulations in assessing the state-agency psychologists' opinions.  He considered the state-agency psychologists' lack of an examining relationship with Plaintiff, their specialization in psychology, their familiarity with SSA regulations, the consistency of their opinions with the record, and the supportability of their opinions based on the objective record.

Plaintiff's contention that the "ALJ never articulates how the objective evidence which detracted from the treating physician's opinion supports the conclusions of the non-examining State agency physicians" is not well-taken.  (Pl.'s St. of Errors 14, ECF No. 12.)  A review of the state-agency psychologists' opinions reveals that they reviewed Dr. Miller's opinions, as well as the medical records from Plaintiff's other treating sources.  Both state-agency psychologists concluded that Plaintiff is limited to simple to moderately complex tasks without strict time or production demands.  This limitation is consistent with objective evidence in the record which demonstrates that Plaintiff can concentrate on most days, but has difficulty with sustained concentration; has increased stress due to her MS, which affects her ability to complete tasks; that she is oriented in all spheres and has good judgment; and that her depression has improved. (R. at 60, 311, 354.)  The ALJ's conclusion that the state-agency psychologists' opinions are consistent with Plaintiff's activities of daily living, including computer use, reading for pleasure, and traveling to Disney World is also supported by the record.  (R. at 94-95, 175-76, 202.)

Plaintiff cites to *Gayheart* to support her contention that an ALJ cannot apply more rigorous scrutiny to the opinion of a treating source than to a non-examining source.  *Gayheart*, 710 F.3d at 379.  The Court agrees with Plaintiff, but points out that in *Gayheart*, "The ALJ's decision provide[d] no indication that he applied the factors set out in § 404.1527(c)—

22

supportability, consistency, specialization—when weighing the consultative doctors' opinions."
*Id.* The same is not true in this case. The ALJ explained the factors he considered in weighing the state-agency psychologists' opinions, and applied no greater scrutiny to the opinions of Dr. Miller. Accordingly, the Undersigned concludes that the ALJ properly assigned great weight to the opinions of the state-agency psychologists.

**B.    Credibility Assessment**

Plaintiff contends that the ALJ's credibility determination was not supported by substantial evidence. The Undersigned disagrees.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This

23

deference extends to an ALJ's credibility determinations "'with respect to [a claimant's] subjective complaints of pain.'"  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531.  Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted).  An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In this case, the ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible to the extent that they are inconsistent with the assessed RFC.  The ALJ explained as follows:

> In this case, the [Plaintiff] represented to SSA she has been unable to work since January 8, 2011; she then amended that, without any explanation to January 17, 2012.  At the same time she was representing to state officials that she has been ready and able to engage in full time employment throughout 2010 and 2011, to

November 2012. In her testimony, the [Plaintiff] acknowledged making repeated false reports of her abilities in seeking unemployment benefits. Because of this duplicity, I find the [Plaintiff] to be less than wholly reliable as a reporter of her functional capacities, and less than wholly credible as a reporter of her medically-determinable symptoms and limitations.

After careful consideration of the evidence, the [ALJ] finds that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The evidence, as described above, shows material inconsistencies in the reports of symptoms and limitations among reports by the [Plaintiff] to SSA evaluators, and treating sources, eroding the reliability of those reports and the credibility of the [Plaintiff]. There is also significant evidence of exaggeration of symptoms and limitations by the [Plaintiff] in testimony, eroding the [Plaintiff's] credibility. At the hearing, there was significant reliance on leading questions from the [Plaintiff's] attorney, questions that suggested the answers given, particularly with respect to psychological symptoms, eroding the reliability of that testimony. In addition, in her hearing testimony, the [Plaintiff] professed to be a poor historian, further eroding the reliability of reports of symptoms and limitations.

. . . With respect to the [Plaintiff's] mental limitations, the report of her psychologist and the claimant's report of her daily living activities include performance of activities such as computer use, reading for pleasure, and traveling with her family to Disney World, which suggests that her psychological impairments do not constitute a substantial loss of the [Plaintiff's] ability to meet the basic mental demands of work within the meaning of Social Security Ruling 85-15.

(R. at 94 (internal citations omitted)).

Contrary to Plaintiff's assertion, the ALJ offered a variety of valid reasons for discounting her credibility. First, the ALJ did not improperly discount Plaintiff's credibility on the basis that she applied for both unemployment and social security disability benefits. The Sixth Circuit has held that "[a]pplications for unemployment and disability benefits are inherently inconsistent." *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). Here, the ALJ properly discounted Plaintiff's credibility because Plaintiff collected

unemployment benefits, which required her to attest that she is willing and able to work, during the period she alleged she was disabled.  *See Rowland-Monk v. Comm'r Soc. Sec.*, 1:13-cv-754, 2015 WL 104897, * 8 (S.D. Ohio, Jan. 7, 2015) (finding that "Plaintiff's inconsistent statements and her testimony that she was capable of working full-time during the alleged disability period substantially supports the ALJ's decision to discount her credibility.")[4]

In addition, the ALJ properly considered and analyzed the objective evidence in the record when determining Plaintiff's credibility.  *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). The ALJ also properly discounted Plaintiff's credibility based upon the inconsistencies between her testimony and the record.  *See Walters*, 127 F.3d at 531 (discounting credibility appropriate where ALJ finds contradictions between claimant's testimony and the record).  For example, Dr. Miller indicated that Plaintiff had no cognitive functioning problems, but Plaintiff reported that she has difficulties with cognition.  (R. at 92.)  Additionally, Plaintiff's testimony that she attempted suicide contradicts Dr. Miller's report that she has never attempted suicide.  (R. at 40-41, 359.)

Further, the ALJ properly considered Plaintiff's testimony that she wanted to stop taking anti-depressants, as well as Dr. Miller's notes that Plaintiff does well without anti-depressants and now is only treated monthly rather than weekly or bi-weekly.  *See* SSR 96-7P, 1996 WL 374186 (Jul. 2, 1996) (explaining that an adjudicator must consider "[t]he type, dosage,

---

[4]The Court acknowledges the August 8, 2010 Memorandum of former Chief Administrative Law Judge Frank Cristaudo which indicates that the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits.  While the receipt of unemployment benefits does not necessarily preclude the receipt of disability benefits, it remains a factor that should be considered in determining whether a Plaintiff is disabled.

effectiveness, and side effects of any medication the individual takes" and the "treatment, other than medication, the individual receives").  This evidence indicates that her symptoms are not as severe as she suggests.

Finally, "an ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."  *Walters*, 127 F.3d at 532. Here, the ALJ found that Plaintiff's use of a computer, reading for pleasure, and traveling to Disney World suggests that her ability to meet the mental demands of employment is not as limited as she suggests.  (R. at 94-95.)  Because substantial evidence supports the ALJ's credibility assessment, it is **RECOMMENDED** that Plaintiff's second statement of error be **OVERRULED**.

## VII.  CONCLUSION

For the reasons above, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and the Commissioner of Social Security's Decision be **AFFIRMED**.  (ECF No. 12.)

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 22, 2015                                      */s/ Elizabeth A. Preston Deavers*
                                                           Elizabeth A. Preston Deavers
                                                           United States Magistrate Judge