**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE WOOLDRIDGE,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:14-cv-1139** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **COMMISSIONER OF SOCIAL** | : | **Magistrate Judge Deavers** |
| **SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on the Plaintiff's Objections (Doc. 16) to the Magistrate

Judge's June 22, 2015 **Report and Recommendation** (Doc. 15), recommending that the Court

overrule the Plaintiff's Statement of Errors (Doc. 9) and affirm the Commissioner's decision.

Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections

are hereby **SUSTAINED** and the Court **REJECTS** the Magistrate Judge's **Report and**

**Recommendation**. Accordingly, the Commissioner's decision is **REVERSED** and

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in

accordance with this decision.

## I.        BACKGROUND

Plaintiff Stephanie Wooldridge filed her application for a Period of Disability and

Disability Insurance Benefits on January 8, 2011, alleging disability since that date due to

Multiple Sclerosis ("MS") and related conditions, including depression and anxiety. Her

application was denied initially, and upon reconsideration. The Administrative Law Judge

("ALJ") held a hearing on August 27, 2012, at which time Plaintiff amended her onset date to

January 17, 2012. The ALJ denied benefits on November 27, 2012.

1

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. *See* 20 C.F.R. § 404.1520.[1] First, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairments of MS, major depressive disorder, and anxiety disorder. The ALJ also found that Plaintiff had a non-severe impairment of optic atrophy with neuritis. At step three, the ALJ determined that these impairments did not, at any time, meet or equal the requirements of any section of the

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Prior to step four[2], the ALJ

concluded that Plaintiff had the following mental residual functioning capacity ("MRFC"):[3]

> Due to her mental impairments, the [Plaintiff] can understand and remember
> simple and some complex instructions, where production quotas are not critical,
> in a static work setting.

(Record, Doc. 9 at 91). In reaching this conclusion, the ALJ assigned "great weight" to the

opinions of the Bureau of Disability Determination's medical experts ("state-agency

psychologists") who reviewed Plaintiff's medical records. He also assigned great weight to the

opinion of a psychological consultative evaluator who, as both parties concede, does not actually

exist on the record. The ALJ explained that their three opinions were based on the objective

medical evidence of record, consistent with the credible portion of Plaintiff's activities of daily

living evidence, and had been provided by sources shown to be familiar with Social Security

Administration standards.

The ALJ also considered the opinions of Dr. Miller, Plaintiff's treating psychologist. The

ALJ did not grant controlling weight to Dr. Miller's opinions because: (1) Dr. Miller did not

provide his treatment notes; (2) the ALJ presumed that sympathy for his patient improperly

motivated Dr. Miller's opinion; (3) and the ALJ determined that the totality of the medical

evidence supported that the claimant was not as severely limited as assessed by Dr. Miller. The

ALJ did not, however, ever state how much weight was in fact afforded to Dr. Miller's opinions

as a whole.

---

[2] "Before we go from step three to step four, we assess your residual functional capacity.... We
use this residual functional capacity assessment at both step four and step five when we evaluate
your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F.
App'x 26, 28, n. 3 (6th Cir. 2009).

[3] As the Plaintiff objects only to portions of the ALJ's decision concerning her MRFC, this Court
includes only those portions of the RFC which relate to her MRFC, and those facts pertaining to
her MRFC.

Thus, at step four, the ALJ determined that Plaintiff could not perform her past work as a dental hygienist because of hand tremors. Finally, at step five he found that although with such restrictions Plaintiff could not perform her past work, she could do certain jobs identified by the vocational expert that existed in significant numbers in the State and national economies, including hand packer, production clerk, and mail clerk.

The Appeals Council denied Plaintiff's request for review on June 20, 2014, making the ALJ's decision final. Plaintiff filed the instant action in this Court on August 6, 2014.

On January 23, 2015, the Plaintiff filed a statement of specific errors. First, Plaintiff contended that the ALJ erred by failing to weigh properly the medical source opinions while formulating the Plaintiff's residual functional capacity. Second, Plaintiff argued that the ALJ failed to assess properly her credibility when evaluating her symptoms and the functionally limiting effects of her impairments. On June 22, 2015, the Magistrate Judge issued a Report and Recommendation, overruling the Plaintiff's statement of specific errors. (Doc. 15). The Plaintiff objected to the Magistrate Judge's Report and Recommendation on June 30, 2015. (Doc. 16). The Commissioner did not file a response.

The relevant facts concerning the Plaintiff's MRFC are thoroughly set forth in the Magistrate Judge's Report and Recommendation, (Doc. 15); those facts that are relevant to this Court's decision will be incorporated into the analysis below.

## II.     STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  This Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and

was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

### III.    ANALYSIS

Plaintiff's objections are as follows: (1) The Magistrate Judge improperly concluded that the ALJ's rejection of the opinion of treating psychologist, Dr. Miller, was supported by

substantial evidence; (2) the great weight afforded to the state agency psychologist's opinions who did not examine the Plaintiff is not supported by substantial evidence; and (3) the Magistrate Judge erred in concluding that it was harmless error for the ALJ to cite to and assign great weight to a psychological consultative report that does not exist on the record. The Court will take each objection in turn.

### A. Proper Weight Afforded to Dr. Miller's Opinions

Plaintiff objects to the Magistrate Judge's finding that the ALJ gave legally sufficient reasons for not giving controlling weight to the opinions of Dr. Miller, Plaintiff's treating psychologist. Further, the Plaintiff argues that the Magistrate Judge erred in finding substantial evidence supported rejecting Dr. Miller's opinions in their entirety, as the ALJ never cited to the evidence on which he relied to come to this conclusion. An analysis of these objections requires a review of the facts pertaining to Dr. Miller.

### 1.  Facts Pertaining to Dr. Miller

Dr. Miller is a psychologist who has been treating Plaintiff on an ongoing basis since February 2010. The record contains four reports from Dr. Miller. The first is a form Dr. Miller filled out on March 15, 2011 for the Rehabilitation Services Commission Bureau of Disability Determination, which, according to the form, he filled out on the same day he saw Plaintiff for a session. (Record, Doc. 9. at 311–12.) The Magistrate Judge summarized the content of that form as follows:

> In the report, he noted that Plaintiff was oriented in all spheres, exhibits good judgment, has no problem with cognitive functioning, and that she struggles with depression, anxiety, and apprehension due to her MS. (R. at 311.) He further noted that she can concentrate on most days, but has problems with sustained concentration. Dr. Miller explained that Plaintiff experiences stress, frustration, and feelings of inadequacy due to her inability to work as a dental hygienist because of her hand tremor. *Id.* He noted that Plaintiff's depression and anxiety increase when her MS symptoms increase. He stated that "on-going

6

psychotherapy sessions have been extremely supportive and pt. responds well to support; currently pt. able to manage [without] anti-depressant meds...." (R. at 312.) He diagnosed Plaintiff with severe major depressive disorder, without psychotic features. *Id.*

*Wooldridge v. Comm'r of Soc. Sec.*, No. 2:14-CV-1139, 2015 WL 3852922, at *4 (S.D. Ohio June 22, 2015). On August 4, 2011, Dr. Miller completed another report, which is substantially the same as the March 15, 2011 report. (Record at 333–34).

On May 1, 2012, Dr. David Miller conducted a psychological consultation of Plaintiff memorialized in a report, as well as completed a questionnaire concerning Plaintiff's MRFC. Along with those records, the Plaintiff also submitted a Certificate of Disability for the Homestead Exemption that Dr. Miller completed (R. at 358-65.) The Magistrate Judge summarized all of that evidence as follows:

> Dr. David Miller noted that Plaintiff has struggled with depression, anxiety, apprehension, and low self-esteem secondary to her MS diagnosis. He noted that "[a]t times, her depressive features have resulted in some thoughts of self-harm, although she has never refined a plan nor taken any steps toward suicide attempts." *Id.* Dr. Miller indicated that he has treated Plaintiff regularly since February 2010 and that she has attended 39 sessions with him. He stated that initially, she was seen every week to every other week, but is now seen on a monthly basis. (R. at 360.) He noted that "in addition to being prescribed an anti-depressant medication (Prozac) by her primary care physician, Stephanie feels her psychotherapy sessions have been helpful in learning coping skills to better manage her symptoms and resolving frustration or conflicts that lead to stress which exacerbates the physiological/neurological symptoms of MS." *Id.*
>
> On mental status examination, Dr. Miller found that Plaintiff had an easy rapport and was cooperative, attentive, and tense. (R. at 359.) He further found that her facial expressions were tense, worried, sullen, sad, and tearful; her affect was dysphoric; her mood was despairing, depressed, empty, friendly, angry, and anxious; her motor activity was decreased with tremors; her speech was normal and spontaneous; her behavior was normal; and her cognition was normal. *Id.*
>
> Dr. Miller again noted that Plaintiff feels inadequate due to being unable to work as a dental hygienist, but stated that she has learned that she can still function well as a mother and wife. *Id.* He explained that she has "gained ground in self-esteem and reducing the pain associated with feeling inadequate." *Id.* Regarding compliance with treatment, Dr. Miller noted that "[Plaintiff] is very faithful to

sessions, cooperative, and motivated as a patient; she seems anxious to learn more about her disease and coping skills that will help her function despite the limitations that MS pose on her." *Id.*

As page 5 of the form, Dr. Miller filled out a Certificate of Disability for the Homestead Exemption, in which he checked the boxes indicating that Plaintiff is totally disabled by virtue of both a physical and a mental disability.

Dr. Miller also completed a Mental Residual Functional Capacity Assessment on May 1, 2012. Dr. Miller opined that Plaintiff is not limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He opined that Plaintiff is slightly limited in her ability to understand, remember and carry out short and simple instructions and in her ability to interact appropriately with the general public. (R. at 364.) He opined that Plaintiff is moderately limited in the following areas: in the ability to sustain an ordinary routine without special supervision; in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in the ability to accept instructions and respond appropriately to criticism from supervisors. He opined that Plaintiff is markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to tolerate the ordinary stress and pressure associated with day to day work activity. *Id.* Dr. Miller concluded that Plaintiff's conditions would deteriorate if she is placed under the stress of employment. Finally, Dr. Miller opined that Plaintiff would not be capable of engaging in substantial gainful competitive employment because of her stress levels and MS symptoms. (R. at 365.)

*Wooldridge*, 2015 WL 3852922, at *3-5.

Between steps three and four, the ALJ considered Plaintiff's MRFC as informed by Dr.

Miller's opinions, summarizing his findings as follows:

Regarding the claimant's mental impairments, as noted above, the claimant does not allege that they are severe enough to meet the requirements of any listing. David Miller, Ph.D., the claimant's treating psychologist, completed forms in connection with the claimant's disability application in May 2012. He indicated that although the claimant had some thoughts of self harm, "she has never refined a plan nor taken any steps towards suicide attempts" (Exhibit 11 F/2). This appears to directly contradict the claimant's hearing testimony of writing a suicide note and putting a gun to her head, which she gave as the reason for her treatment with Dr. Miller. Her psychologist indicated that the claimant had no difficulties with cognition, which again contradicts the claimant's testimony (Id.). When she began seeing Dr. Miller in February 2010, he stated that she was seen weekly or

biweekly, but after the initial treatment phase had progressed to monthly counseling sessions. This suggests that her mental health issues have improved with treatment. Dr. Miller indicated that the claimant "has learned that she can still function well as a mother and wife." He checked boxes that indicated he considered the claimant to be "permanently and totally disabled…by virtue of [both] physical and mental disability (Id. at 4). He also endorsed selections on a mental residual functional capacity form provided by the claimant's attorney, indicating that he considered her markedly limited in her ability to maintain a schedule and to tolerate the stress and pressure associated with day-to-day work activity, as well as checking a box indicating that he did not think the claimant could work for 40 hours a week, although he noted that the claimant's work as a dental hygienist was highly stressful and the claimant could not control her hands to perform this work. This appears to suggest that Dr. Miller did not consider the claimant's ability to perform work other than her past job as a dental hygienist.

(R., at 92-3.)

Immediately following this summary of Plaintiff's mental capacity, the ALJ analyzed the

weight to be afforded Dr. Miller's opinions as follows:

Dr. Miller appears to be a treating source within the meaning of 20 CFR § 416.927.... Dr. Miller's assessment is not entitled to that degree of probative consideration [controlling weight] for multiple reasons. First, the doctor does not provide sufficient clinical and laboratory data to support his conclusion. No treatment notes from Dr. Miller have been submitted in evidence. Dr. Miller indicated that the claimant was physically disabled, although he has no medical training and has no basis other than the claimant's subjective claims for making such a statement. Last, his conclusion of disability addresses an area that is specifically reserved to the Commissioner under Social Security Ruling 96–5p. This report is not entitled to any significant weight and is therefore rejected.

The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of the record, as in the current case. The totality of the medical evidence clearly supports that the claimant is not as severely limited as assessed by Dr. Miller.

(*Id*. at 93).

Plaintiff raised two distinct assessments of error to the Magistrate Judge regarding the ALJ's rejection of Dr. Miller's opinions. First, Plaintiff contended that the ALJ gave legally insufficient reasons for rejecting Dr. Miller's opinions as controlling. Second, Plaintiff argued that assuming arguendo the opinions should be granted less than controlling weight, the ALJ failed procedurally after that determination because he did not determine how much weight should be afforded Dr. Miller's opinions. The Magistrate Judge disagreed, finding that the ALJ provided the following sufficient reasons for rejecting Dr. Miller's opinion as controlling: (1) failure to provide sufficient clinical and laboratory data, specifically, Dr. Miller's failure to provide treatment notes; and (2) inconsistency with the totality of the medical evidence in the record, including: inconsistency with Dr. Miller's own reports, inconsistency with other doctors' treatment notes in the record, and inconsistency with Plaintiff's own statements in the record. Additionally, the Magistrate Judge found that since there is no prerequisite that the ALJ must expressly consider each factor under 20 C.F.R. § 404.1527(c) when determining the weight to be granted to a medical opinion, the ALJ did not ere in rejecting Dr. Miller's opinion, and substantial evidence supported rejecting Dr. Miller's opinions.

## 2.  Standard for Weighing Treating Physicians' Opinions

The Sixth Circuit has emphasized time and again that "[t]he source of the [medical] opinion [] dictates the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376. When it comes to a medical source who regularly treats the claimant, otherwise known as a "treating source," the ALJ must follow a two-step process. *See DeHaven v. Comm'r of Soc. Sec.*, No. 1:12 CV 2859, 2014 WL 903112, at *4 (N.D. Ohio Mar. 7, 2014).

First, the treating source's opinions "must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory

diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(c)(2)); *see also Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)).

At step two of the weight-giving analysis for treating physicians' opinions, "if the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* (citing *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c)(2)-(6)). In addition, the regulation states that the ALJ "will always give good reasons in [its] ... decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). The Sixth Circuit has held that according to a Social Security Ruling, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). Further, even when a treating physician's opinions are not granted controlling weight, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." *Rogers*, 486 F.3d at 242 (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188,

11

at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

The procedural requirements of giving good reasons for providing less than controlling weight to a treating source's opinion, and making clear the weight actually afforded to a treating source's opinion "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* Accordingly,

> where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. *See Wilson,* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Wilson,* 378 F.3d at 547. However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley*, 581 F.3d at 409.

### 3. Analysis

Plaintiff does not contend that the ALJ erred in rejecting Dr. Miller's opinion that Plaintiff was totally disabled. Instead, Plaintiff takes issue with the ALJ's analysis of Dr. Miller's opinions concerning Plaintiff's functional limitations for the purposes of formulating Plaintiff's RFC. This Court agrees that the ALJ failed to meet its procedural burden in the two-step analysis used to determine the appropriate weight to grant the opinions of a treating source. First, the ALJ failed to give legally sufficient reasons for granting Dr. Miller's opinions less than controlling weight. Second, the ALJ erred procedurally in failing to state with clarity the weight ultimately afforded to those opinions, and, as a corollary, failed to provide "good reasons" for the weight ultimately afforded to his MRFC opinions. Thus, this Court respectfully disagrees with the ALJ's determinations which were affirmed by the Magistrate Judge.

As a threshold matter, when the ALJ granted Dr. Miller's opinion less than controlling weight, he referred only to Dr. Miller's opinion that the plaintiff was entirely disabled, and did not refer clearly to any of Dr. Miller's opinions concerning Plaintiff's specific mental limitations which may affect her MRFC. Thus, as the ALJ's analysis concerning the weight to be granted to Dr. Miller's opinions provides no clear mention of Dr. Miller's other opinions—specifically those concerning her anxiety, depression, lack of concentration, and limitations in her ability to maintain a schedule and to tolerate the stress and pressure associated with day-to-day work activity—the ALJ's decision is procedurally erroneous and should be remanded for this reason alone. *See Wooten v. Astrue*, No. 1:09 CV 981, 2010 WL 184147, at *9 (N.D. Ohio Jan. 14, 2010) (finding that ALJ's good reasons for rejecting treating doctor's opinion that plaintiff was totally disabled did not provide good reason for rejecting the doctor's opinions concerning the plaintiff's "specific functional limitations," which the ALJ left unaddressed).

Assuming *arguendo* that the ALJ's analysis regarding why he did not grant Dr. Miller's opinions controlling weight applies to all of Dr. Miller's opinions concerning Plaintiff's specific mental limitations, this Court still finds that the ALJ failed to provide legally sufficient reasons for not granting controlling weight to his opinions, i.e., he failed at step one of the two-step analysis for affording weight to a treating physician's opinions. As stated above, the treating source's opinions must be given controlling weight if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

This Court can only construe two reasons the ALJ gave for not granting controlling weight to Dr. Miller's opinions regarding Plaintiff's specific mental limitations:[4] (1) Dr. Miller failed to enter his treatment notes into the record; and (2) a boilerplate assessment that Dr. Miller formulated his opinions concerning Plaintiff out of sympathy, or for some other improper motive, a fact the ALJ believed was confirmed by his observation that Dr. Miller's opinions departed substantially from the rest of the record evidence. The Court finds both reasons legal insufficient based on the evidence of record.

First, the ALJ gave Dr. Miller's opinions less than controlling weight because none of his treatment notes were submitted into evidence, and thus the ALJ concluded that Dr. Miller did not provide sufficient clinical and laboratory data pursuant to the regulations. Such a conclusion is not entirely accurate. Dr. Miller submitted reports from March 15, 2011, August 4, 2011, January 1, 2012, and May 1, 2012. He indicates that he completed the March, August and May reports on the same day as he saw and treated the Plaintiff. Therefore, this Court sees no meaningful distinction between these reports and treating notes. The Sixth Circuit has held that

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen,* 817 F.2d 865, 873–74 (D.C. Cir. 1987), quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981)).

Relying on this rationale, the *Blankenship* Court held that the ALJ was not justified in dismissing the findings of a doctor who provided a single evaluation of a claimant after seeing him on just

---

[4] The ALJ also states that Dr. Miller's conclusion on disability "addresses an area that is specifically reserved to the Commissioner." This reasons applies only to Dr. Miller's opinion of total disability, and does not apply to Dr. Miller's other opinions.

one occasion, as "[m]ental disorders are not uncommonly diagnosed after one interview." *Id*. In this case, in contrast, the ALJ was aware that Dr. Miller treated the patient on 39 occasions, and that he provided four consistent reports. In each of these reports, Dr. Miller provided thorough and reasoned explanations for his diagnoses that the Plaintiff suffered from anxiety and depression, as well as for his opinions and observations about how these diagnoses limited her daily functioning in a range of ways. In fact, the ALJ included anxiety and depressive disorders in his listing of Plaintiff's severe impairments, diagnoses that are traceable only to Dr. Miller. Besides the fact that Dr. Miller did not provide all of his treatment notes, the ALJ does not provide sufficient rationale for doubting his diagnostic techniques or conclusions captured in the four reports.

In *Price v. Comm'r Soc. Sec. Admin.*, the Sixth Circuit considered a similar situation in which a treating physician provided only responses to interrogatories and to a questionnaire, but no treatment notes. 342 F. App'x 172, 176 (6th Cir. 2009). The Court found that even though the doctor had treated the claimant for two years, his opinions were not entitled to controlling weight because while he checked boxes indicating the claimant had severe impairments, he declined repeatedly to provide explanations for his responses. Further, what responses he did provide were vague and unhelpful. In contrast, in this case, Dr. Miller provided four separate evaluation forms, at least three of which were filled out on the same day as seeing the claimant, and each form provided detailed and coherent responses to every interrogatory.

Thus, like in *DeHaven v. Comm'r of Soc. Sec.*, this Court finds the fact that Dr. Miller did not submit all of his treatment notes was not a good reason to grant less than controlling weight to his opinions.  No. 1:12 CV 2859, 2014 WL 903112, at *7 (N.D. Ohio Mar. 7, 2014). In *Dehaven*, the court rejected the ALJ's determination that since the treating physician expressed

her opinions concerning plaintiff's functional limitations via a questionnaire, the opinions should be discounted or dismissed because they came without supporting rationale. *Id*. The Court reasoned that such a determination ignored the basic structure of the questionnaire administered by the Department (which presupposed the existence of treating notes), and penalized the doctor for not providing something the form never sought and assumed to exist. *Id*. The same analysis applies here. The forms Dr. Miller filled out for the Agency gave him the option of submitting a medical report *or* copies from existing records, either of which was expected to include a history, objective findings, diagnosis, response to treatment and work-related functional limitations. All reports submitted by Dr. Miller contained all the information requested and thorough explanations. Thus, the fact that is opinions were contained in reports and not treatments notes does not, alone, indicate that his opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2).

Second, the ALJ does not provide sufficient reasons for why Dr. Miller's opinions are "inconsistent with the other substantial evidence in [the] case record," the second criteria for not granting a treating physician's opinion controlling weight *Id*. The ALJ discounted Dr. Miller's opinions by concluding that the totality of the medical evidence "clearly supports that the claimant is not as severely limited as assessed by Dr. Miller." To reach this conclusion, however, the ALJ utilized boilerplate language to find that Dr. Miller was likely driven by improper motives—such as sympathy for his patient, or a capitulation to the patient's request for supportive notes— when formulating his opinions concerning Plaintiff's limitations. Then, he found that this conclusion was confirmed by the fact that Dr. Miller's opinion "departs substantially from the rest of the evidence of the record." The ALJ provides no further explanation regarding how Dr. Miller's opinions depart from the rest of the evidence, and cites to

no evidence in the record that contradicts Dr. Miller's findings regarding Plaintiff's specific mental limitations.

Although the Magistrate Judge provided a post hoc analysis of record evidence regarding Plaintiff's mental limitations to conclude that Dr. Miller's opinions were inconsistent with record evidence, and thus were entitled to less than controlling weight and no weight at all, such post hoc reasoning undermines claimants' procedural rights. *See Wilson,* 378 F.3d at 544 (holding that where the ALJ fails to give good reasons for his rejection of a treating source's opinion, remand is required even if substantial evidence in the record otherwise supports the ALJ's decision). Further, the Sixth Circuit has found that an ALJ's failure to identify the substantial evidence that is purportedly inconsistent with a treating source's opinion in his or her analysis constitutes procedural error. *See Gayheart*, 710 F.3d at 377 (holding that the failure to provide "good reasons" for not giving a treating physician's opinions controlling weight "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation," and that purported inconsistency with record evidence was not a good reasons for why he failed to grant the opinion controlling weight where the ALJ did not identify the substantial evidence that was "purportedly inconsistent" with the opinions).

In sum, because the ALJ failed to provide good reasons for finding Dr. Miller's opinions were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or were "inconsistent with the other substantial evidence in [the] case record," the ALJ's conclusion that Dr. Miller's opinions concerning Plaintiff's specific mental limitations were not entitled to controlling weight was procedurally erroneous.

Finally, even assuming *arguendo* that the ALJ was correct in his determination that Dr. Miller's opinion should not be granted controlling weight and that he provided sufficient reasons

17

for doing so, the ALJ's failure to explain the weight ultimately given to Dr. Miller's opinions concerning Plaintiff's specific mental limitations contravenes the Agency's procedural requirements. *See Blakley*, 581 F.3d at 408; *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (remanding to the Commissioner to litigate the proper weight that should be granted to a treating physician's opinions regarding the claimant's RFC where the ALJ determined summarily only that the doctor's opinion should not be given "controlling weight" because it was inconsistent with record, but did not say what weight it ultimately should be given). The ALJ states merely that "Dr. Miller's assessment is not entitled to that degree of probative consideration [referring to controlling weight] for multiple reasons," as well as that "[t]he totality of the medical evidence clearly supports that the claimant is not as severely limited as assessed by Dr. Miller." Neither of these statements fulfills the ALJ's procedural mandate that a decision denying benefits "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544.

In addition, even assuming the decision is sufficiently specific to make clear that the ALJ gave no weight to Dr. Miller's opinions concerning Plaintiff's specific limitations, the ALJ does not fulfill his procedural obligation to include "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record . . . ." *Id.*

First, even accepting the ALJ's summary assertion that Dr. Miller's opinions concerning Plaintiff's mental limitations are contradicted by record evidence, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4).

18

Thus, inconsistency in the record is not a good reason for granting no weight to Dr. Miller's opinions.

Second, "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 544 (quoted with approval in *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 747 (6th Cir. 2007)). Thus, even accepting that Dr. Miller's failure to submit his treatment notes supports granting his opinions less than controlling weight, his reports certainly provide sufficient information to permit an analysis pursuant to the factors under 20 C.F.R. § 1527(c)(2)-(6), which should be used to afford appropriate weight to a treating physician's opinions. Here, there is no indication that the ALJ performed such an analysis.

The Sixth Circuit has repeatedly stated that it does "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley*, 573 F.3d at 267 (citations omitted). Additionally, Dr. Miller's opinions are not so patently deficient as to be totally lacking in credibility, nor has the Commissioner met the goal of the procedural safeguard of reason giving, as outlined *supra*. *See Blakley*, 581 F.3d at 409.

In sum, because the ALJ failed to: (1) give legally sufficient reasons for not granting Dr. Miller's opinions regarding Plaintiff's specific mental limitations controlling weight; (2) set forth with sufficient clarity the weight ultimately afforded to Dr. Miller's opinions concerning

19

Plaintiff's specific mental limitations; and (3) set forth "good reasons" for discounting them, remand is proper in this case. On remand, the ALJ should structure the opinion to remove any doubt as to the weight given Dr. Miller's opinion and the reasons for assigning such weight, consistent with the instruction in this opinion.

### B. Weight Afforded to Opinions of State Agency Psychological Consultants

Plaintiff also urges this Court to reject the Magistrate Judge's determination that the ALJ properly assigned great weight to the opinions of State agency psychologists, Drs. Goldsmith (R., Ex. No. 1A), and Voyten (R., Exh. No. 3A), and find instead that the weight assigned is not supported by substantial evidence.

The ALJ weighed the State agency psychologists' opinions as follows:

> Great weight is given to the residual functional capacity opinions and case analyses of the Bureau of Disability Determination (BDD) medical experts set forth in Exhibits 1A and 3A. Although neither examining nor treating mental health providers, these experts are licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinions are based on the objective medical evidence of the record, and consistent with the medical evidence of record overall, including treatment records at [listing every medical record in Plaintiff's administrative record]. They are consistent with the credible portion of activities of daily living evidence, and have been provided by sources shown to be familiar with SSA and occupational standards.

(R. at 95). The activities of daily living evidence to which the ALJ refers is summarized in his decision as follows:

> With respect to the claimant's mental limitations, the report of her psychologist and the claimant's report of her daily activities include performance of activities such as computer use, reading for pleasure, and traveling with her family to Disney World (See Exhibits 6E and 15E), which suggests that her psychological impairments do not constitute a substantial loss of claimant's ability to meet the basic mental demands of work within the meaning of Social Security Ruling 85-15.

In their responses to the "Mental Residual Functional Capacity Assessment" form, Drs. Goldsmith and Voyten concluded that Plaintiff is "moderately limited" in her ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Then, both physicians summarized these limitations in the same narrative form, concluding Plaintiff is "limited to simple to moderately complex tasks without strict time or production demands." This phrase is similar to Plaintiff's ultimate RFC:

> Due to her mental impairments, the [Plaintiff] can understand and remember simple and some complex instructions, where production quotas are not critical, in a static work setting.

Dr. Goldsmith provides "Findings of Fact and Analysis of Evidence" preceding his MRFC determinations, while Dr. Voyten provides none. In his findings and analysis, Dr. Goldsmith includes only two mental health findings—one from Plaintiff's neurologist's, Dr. Mankowiski, who stated that Plaintiff denied anxiety/depression, and the second from a summary of Dr. Miller's reports, as follows:

> Oriented all spheres, good judgment, no problems w/ cognitive functioning. Struggles w/ depression & anxiety, apprehension due to MS and progressive nature of disease & resulting limitations. Can conc most days [sic] Increased frustration w/ disease interfering w/ sustained conc, STM, LTM and ability to tolerate stress. Some days better than others. Increased stress affects ability to complete tasks. Compliant w/ tx. Capable.

(R. at 60). Dr. Miller provided no further analysis or explanation to accompany his MRFC questionnaire, while Dr. Voyten added this additional explanation to her MRFC:

> I have reviewed the MER in file and the new pertinent information and affirm the MRFC. The clmt does have some increased anxiety with dx. However, she has

good compliance with psychotherapy, and she is able to carry out her daily routines with support of therapy and family.

(R. 80).

Agency regulations state that "administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(e)(2)(i); *McGrew*, 343 F. App'x at 32. Further, as the Magistrate Judge explained:

> opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart*, 710 F.3d at 376. This Court determined *supra* that the ALJ erred procedurally in his analysis regarding whether to grant controlling weight to Dr. Miller's opinions concerning Plaintiff's specific mental limitations. Accordingly, pursuant to *Gayheart* and 20 C.F.R. § 404.1527(c), upon remand, the ALJ is to consider Drs. Goldsmith and Voyten's opinions only if the ALJ ultimately does not grant Dr. Miller's opinions controlling weight. Further, should the ALJ find Dr. Miller's opinions are not to be afforded controlling weight, but some other degree of weight, the ALJ must reformulate Plaintiff's MRFC accordingly. *See* 20 C.F.R. § 404.1527(b).

The Court must also evaluate whether the Magistrate Judge erred in finding that the State agency psychologists' limitations finding—that Plaintiff is limited to simple to moderately

complex tasks without strict time or production demands—is consistent with substantial

evidence. The Magistrate Judge found:

> This limitation is consistent with objective evidence in the record which demonstrates that Plaintiff can concentrate on most days, but has difficulty with sustained concentration; has increased stress due to her MS, which affects her ability to complete tasks; that she is oriented in all spheres and has good judgment; and that her depression has improved. (R. at 60, 311, 354.) The ALJ's conclusion that the state-agency psychologists' opinions are consistent with Plaintiff's activities of daily living, including computer use, reading for pleasure, and traveling to Disney World is also supported by the record. (R. at 94–95, 175–76, 202.)

*Wooldridge*, 2015 WL 3852922, at \*13.

Plaintiff contends that Social Security Ruling 96-8 provides that an RFC "is an

assessment of an individual's ability to do sustained work-related physical and mental activities

in a work setting on a regular and continuing basis." It defines "regular and continuing basis" as

the ability to sustain work-related physical and mental activities for 8 hours a day, 5 days a week,

or an equivalent work schedule. *Id*. Thus, in the Magistrate Judge's own words, the ability to

concentrate "most days," would be inconsistent with working 8 hours a day, 5 days a week. Dr.

Goldsmith acknowledges that Plaintiff has "good days and bad days," which is inconsistent with

an ability to sustain a consistent work schedule. These inconsistencies are not resolved in the

record, or by the ALJ.

Additionally, Dr. Voyten acknowledges that Plaintiff "is able to carry out her daily

routines with support of therapy and family." Nothing in the record undermines this observation.

This suggests that without a supportive environment, Plaintiff is unlikely to be able to perform

the tasks expected of her in an average work setting, even one without strict time or production

demands. The regulations state that

> We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or

> work week based on a time-limited mental status examination or psychological testing by a clinician, or based on your ability to complete tasks in other settings that are less demanding, highly structured, or more supportive. We must assess your ability to complete tasks by evaluating all the evidence, with an emphasis on how independently, appropriately, and effectively you are able to complete tasks on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(C)(3), (Mental Disorders). Thus, the State examiner's opinion that Plaintiff maintains a daily routine with the support of friends and family suggests that in a more demanding setting she would require even more support. The RFC does not reflect, however, the necessity that Plaintiff work in a sheltered or supportive work setting, for example. On remand, the ALJ must reconcile this inconsistency when refashioning Plaintiff's RFC.

Lastly, this Court notes that the Magistrate Judge emphasized that the state-agency psychologists' opinions are consistent with Plaintiff's activities of daily living, which, as listed in the opinion, include her ability to use the computer, watch TV, and take a vacation. While an ALJ is justified in considering a claimants ability to conduct daily activities in evaluating the claimant's assertions of ailments, *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), it is beyond reason that the ability to engage in leisure activities such as reading, computer use, and vacationing connotes the ability to sustain—independently and without assistance—the concentration and pace necessary for any 8-hour workday. Further, it appears the ALJ focused on these "isolated pieces of the record" to support his finding that Plaintiff could work on a sustained basis, which the Sixth Circuit has held is an "insufficient basis" for giving a physician certain weight. *Gayheart*, 710 F.3d at 378.

In sum, this Court agrees that the record does not contain substantial evidence to support the state agency psychologists' opinions that Plaintiff's mental limitations would be accommodated merely by the recommendation that Plaintiff's work be limited to simple to

moderately complex tasks without strict time or production demands. *Id.* at 377-78  (finding that the ALJ took many examples of claimant's daily activities out of context, or that such examples were offset by the record, and that none of the examples suggested the ability to do the activities on a sustained basis). On remand, the ALJ must reweigh Drs. Goldsmith's and Voyten's opinions when refashioning Plaintiff's RFC to reconcile the named inconsistencies in their opinions.

### C. Weight Afforded to the Opinion of a Non-Existent Psychological Examiner

Finally, Plaintiff asserts that the Magistrate Judge erred in concluding that the ALJ's act of assigning "great weight" to a psychological consultative report that does not actually exist on the record amounted to nothing more than harmless error. Specifically, the decision states:

> Great weight given [sic] to the opinion of the psychological consultative evaluator set forth in Exhibit 14F, and to the Psychological Review Technique/Mental Residual Functional Capacities, and case analysis set forth in Exhibits 1A and 3A [sic] Their opinions are based on the objective medical evidence of record, and consistent with the medical evidence of record overall. They are consistent with the credible portion of activities of daily living evidence, and are not contradicted by any by [sic] sources shown to be familiar with SSA and occupational standards.

(R. at 95). Exhibit 14F, however, contains a letter from one of Plaintiff's doctors to a vision center. The Magistrate Judge concluded that granting great weight to this nonexistent evaluator was harmless because the Plaintiff's ultimate RFC was more restrictive than the State agency psychologists' opinions, to which the ALJ also assigned great weight.

The Plaintiff contends that granting "great weight" to a nonexistent opinion falls short of the Commissioner's duty to provide a full and fair hearing consistent with her due process rights because it is impossible to ascertain what impact the assumed presence of this phantom report had on the ALJ's overall assessment of Plaintiff's claim. Further, the Plaintiff argues, in reference to the Magistrate Judge's rationale, that there is no logical nexus between whether the

25

determined RFC is more or less restrictive than the two existing State agency psychologists' opinions and whether the ALJ's alleged reliance on a nonexistent psychological examiner was harmless error. This Court agrees.

The Supreme Court has said that due process requires that a social security hearing be "full and fair." *Perales,* 402 U.S. at 401-02. Further, the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge, who "acts as an examiner charged with developing the facts." *Osburn v. Apfel*, 182 F.3d 918 (6th Cir. 1999) (quoting *Perales,* 402 U.S. at 411). In developing the facts to determine whether a claimant is disabled, the regulations state that the ALJ will evaluate every medical opinion received, and consider the medical opinions in the case record along with all relevant evidence received. 20 C.F.R. § 404.1527 (b)-(c). Thus, this Court must assume that pursuant to this regulation, the ALJ relied on what he appears to have believed was an opinion of a psychological evaluator that supported his final MRFC determination. Since such an opinion does not actually exist, this Court must assume as a corollary that the ALJ's opinion is not based on reliable evidence. Further, 20 C.F.R. § 404.953(a) provides that "the administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision. *The decision must be based on evidence offered at the hearing or otherwise included in the record.*" *Flatford v. Chater*, 93 F.3d 1296, 1303 (6th Cir. 1996). Accordingly, as the ALJ's opinion appears to depend in part on evidence not included in the record, it runs afoul of the regulations and Plaintiff's procedural rights.

In *Flatford*, the Sixth Circuit held that consistent with due process, a determination of a Social Security claim requires that the claimant "have the opportunity to present all of his evidence and to confront the evidence against him." 93 F.3d at 1306-07 (holding that the right to

cross-examine the Agency's witnesses should be available to claimants, but only where reasonably necessary to the full development of the case, a discretionary determination that is reviewable by higher courts; even where cross-examination is deemed unnecessary, however, claimants have the right to confront the evidence against them through interrogatories). In this case, the Plaintiff was not on notice of the ALJ's reliance on a nonexistent examiner to which the ALJ granted great weight. This violates Plaintiff's due process right to confront the evidence against him, in whatever manner may have been deemed proper by the court. This error compels this Court to remand this case for an appropriate weighing of medical evidence that does not include the nonexistent medical opinion.

Further, this error is not harmless. An error is harmless only if remanding the matter to the agency "would be an idle and useless formality" because "there is [no] reason to believe that [it] might lead to a different result." *Stacey*, 451 F. App'x at 518-20 (6th Cir. 2011) (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 171, 173 (6th Cir. 2004)). In *Stacey*, the Sixth Circuit considered whether it was harmless error for the ALJ to fail to provide any reasoning as to why it dismissed the opinion of a doctor who examined but did not treat the patient, and adopted, instead, the opinion of a State agency physician who merely reviewed some of the claimant's records but not the opinions of the examining doctor. *Id*. at 520. The Court held that such an error was not harmless because it could not discern from the decision whether the ALJ rejected the examining physician's opinions for legitimate reasons. *Id*. Additionally, the Court found a strong likelihood that the claimant would have prevailed had the opinion been credited. *Id*. And, finally, the Court reasoned that while a failure to discuss the weight afforded to the doctor's opinion may have been harmless if it concerned a peripheral issue, it was not harmless considering the doctor provided one of only three opinions concerning a key issue.

27

A similar rationale as employed in *Stacey* applies in the case *sub judice*. This Court cannot discern from the ALJ's opinion to what degree the nonexistent examining physician's opinions—which it appears from the decision the ALJ believed corroborated his final MRFC determination—influenced the ALJ's decision-making process. Further, Plaintiff's residual mental functioning is a key issue in this case, and great reliance on the non-existent psychological examiner's opinions is not harmless where the only physician actually to have psychologically examined Plaintiff is Dr. Miller, whose opinions greatly differ from the MRFC adopted, and whose opinion the ALJ discounted. Thus, considering this Court has already found other reasons to remand this case for a reweighing of the medical opinions of record regarding Plaintiff's mental RFC, this Court finds on remand that the ALJ must remove from its analysis any reference to or dependence on the nonexistent examiner's opinion.

Remanding this case is not a mere formality, as it "would propel [our Court] into the domain which Congress has set aside exclusively for the administrative agency," if it were to speculate as to the development of the case record and reweigh the medical evidence without the nonexistent examiner. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), and citing *Williams v. Comm'r of Soc. Sec.,* 227 Fed. App'x. 463, 464 (6th Cir.2007)). "Where an 'administrative agency alone is authorized to make' a particular determination, the reviewing court 'must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" *Id*. (quoting *Chenery*, 332 U.S. at 196, 67 S.Ct. 1575).

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Objections are hereby **SUSTAINED**, (Doc. 16), and

the Court **REJECTS** the Magistrate Judge's **Report and Recommendation**. (Doc. 15).

Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this decision.

**IT IS SO ORDERED.**


       **s/ Algenon L. Marbley**
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**

**DATED:  September 24, 2015**